Filed 12/22/23  P. v. Abril CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061637 |
| v. | (Super. Ct. No. 21CF3181) |
| EFREN ABRIL, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charlies C. Ragland, Assistant Attorney General, Junichi P. Semitsu and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

Efren Abril appeals from the judgment entered after a jury found him guilty of possession of a firearm by a felon in violation of Penal Code section 29800, subdivision (a)(1).[1] He contends the prosecutor committed error[2] in his closing and rebuttal arguments. He also argues his conviction violates the Second Amendment to the United States Constitution, as interpreted by *New York State Rifle & Pistol Assn. v. Bruen* (2022) 597 U.S. __ [142 S.Ct. 2111] (*Bruen*).

We affirm. One of the prosecutor's statements during his closing argument had the potential of confusing the jury regarding the interplay of the concept of rejecting unreasonable inferences with the standard of proof beyond a reasonable doubt. We conclude, however, it did not rise to the level of prosecutorial error because "in the context of the entire argument and jury instructions, it was not reasonably likely the jury understood or applied the statement in an improper or erroneous manner." (*People v. Meneses* (2019) 41 Cal.App.5th 63, 73 (*Meneses*).) Abril also failed to show the prosecutor committed error in his rebuttal argument.

We also reject Abril's Second Amendment challenge. We agree with *People v. Alexander* (2023) 91 Cal.App.5th 469, 479 (*Alexander*) and its progeny holding the Second Amendment protects only the law-abiding citizen's right to bear arms and "[c]onvicted felons, by definition, are not law abiding." Therefore, Abril's conviction for possession of a firearm by a felon in violation of section 29800, subdivision (a)(1) is constitutional.

---

[1] All further statutory references are to the Penal Code.

[2] We use the term prosecutorial error rather than prosecutorial misconduct because prosecutorial misconduct "'is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666–667 (*Centeno*).) "'A more apt description of the transgression is prosecutorial error.'" (*Id.* at p. 667.)

2

FACTS

Around 10:00 p.m. on August 27, 2021, Santa Ana Police Officer Tanner Bell was on duty when he was dispatched to an industrial complex in Santa Ana. As he approached the complex, he saw a four-door car driving away from the location. Bell observed the car's front lights were not on, the front two windows were tinted, and the rear license plate was faded, making it almost impossible to read. Bell initiated a traffic stop of the car.

When Bell walked up to the stopped car, he found Abril in the driver's seat, A.A. in the front passenger seat, and three male juveniles in the back seat. The car belonged to A.A.

All five occupants were removed from the car while Bell searched the car. During his search, Bell found an unsecured, loaded firearm under the front passenger seat. Abril and A.A. were arrested and transported to jail.

Later that evening a forensic specialist processed the firearm for DNA by swabbing its grip, trigger, trigger guard, and slide. She also used buccal swabs to collect DNA from Abril and A.A.

Orange County Crime Lab forensic scientist Danielle Wieland testified analysis of the DNA samples showed the swab of the trigger contained a DNA mixture of two main contributors, one minor contributor, and one trace contributor. Based on her analysis of the trigger swab, there was very strong evidence Abril was a minor contributor of DNA to that mixture. A.A. was eliminated as a main or minor contributor to that mixture.

The swab of the firearm's grips contained a DNA mixture of two main contributors, two minor contributors, and one trace contributor. Wieland concluded the evidence was very strong Abril was one of the major contributors of DNA to that mixture and provided very weak support that A.A. was a minor contributor of DNA to the same

3

mixture. Wieland testified the swab of the firearm's slide did not yield a good sample amenable to DNA analysis.

Wieland testified she could not determine when the DNA was deposited on the firearm or how long it had been there before the firearm was found. Wieland testified that when a person's DNA profile is determined to be a major contributor of a sample taken from an item, it is possible the person had not physically touched the item, but "direct contact" is most likely in such instances.

The parties stipulated Abril was previously convicted of a felony.

PROCEDURAL HISTORY

At the time of trial, Abril was charged in an amended information with (1) possession of a firearm by a felon (§ 29800, subd. (a)(1); count 1) and (2) possession of ammunition by a felon (§ 30305, subd. (a)(1); count 2). The amended information alleged Abril had a prior "strike" conviction for committing residential burglary. (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1).) After a jury was unable to reach a verdict as to either count, the court declared a mistrial.

A second jury found Abril guilty on count 1 and not guilty on count 2. The trial court found the prior strike allegation true.

The trial court imposed the low term of 16 months and doubled that term under the Three Strikes law because of Abril's prior strike conviction term to impose a total prison sentence of 32 months. Abril timely appealed.

DISCUSSION

I.

PROSECUTORIAL ERROR

In his opening brief, Abril contends the prosecutor, during his closing and rebuttal arguments, "made a number of objectionable comments, including shifting the

4

burden of proof, disparaging defense counsel and introducing facts not in evidence." Abril further contends: "While each of these errors in and of themselves may not constitute prosecutorial misconduct[,] . . . cumulatively these errors prejudicially contributed to the guilty verdict, and require a reversal of the conviction."

*A. Governing Legal Principles*

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' [Citations.] To establish such error, bad faith on the prosecutor's part is not required." (*Centeno, supra*, 60 Cal.4th at p. 666.)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*Centeno, supra*, 60 Cal.4th at p. 667.)

"A prosecutor's conduct violates the federal Constitution when the conduct '"infects the trial with such unfairness as to make the conviction a denial of due process"'; that is, when the conduct is '"of sufficient significance to result in the denial of the defendant's right to a fair trial.'" [Citation.] A prosecutor's argument that does not render a criminal trial fundamentally unfair violates California law only if the conduct involves "'"'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"'"'" (*Meneses, supra*, 41 Cal.App.5th at pp. 70–71.)

We first discuss Abril's contention the prosecutor committed error in his closing argument by attempting to dilute the prosecution's burden of proof. We next

5

address Abril's claim the prosecutor committed error in his rebuttal argument by disparaging his trial counsel and shifting the burden of proof.

B. *The Prosecutor's Statements in His Closing Argument Did Not Constitute Error in Light of the Entire Argument and Jury Instructions*

In his opening brief, Abril contends the prosecutor attempted to dilute the prosecution's burden of proof at the beginning of his closing argument when he stated: "Reasonable doubt, we'll get to later on, but essentially that is the legal standard, proof beyond a reasonable doubt. The main thing I want to focus on here is, as the judge has already stated, it's not proof beyond all possible doubt, beyond a shadow of a doubt, it's proof beyond a reasonable doubt. [¶] Another way of putting it is, based on the evidence in this case, and only the evidence in this case, what is the only reasonable conclusion?"

After Abril's counsel objected to the prosecutor's statement on the ground it misstated the law, the trial court overruled the objection, stating: "Again, I'll tell you what the law is, ladies and gentlemen. If anything the attorneys say conflicts with my instructions, you must follow my instructions."

The prosecutor thereafter resumed his closing argument, stating: "If the only reasonable conclusion -- I don't mean possible -- the only reasonable conclusion points to guilt, you, as the jury, must -- not should -- must vote guilty and find Mr. Abril guilty." Citing *Centero, supra*, 60 Cal.4th at page 672, Abril contends the prosecutor's argument suggested the jury could find Abril guilty "so long as the People's evidence reasonably support[ed] a guilty verdict" and as such, constituted "'manifest' error."

"While a prosecutor may appeal to the jurors to use their common sense, experience, and reason to evaluate the evidence and assess witness credibility, a prosecutor may not argue or even suggest the prosecution's burden of proof is satisfied if the prosecution's evidence presents a reasonable account." (*Meneses, supra*, 41 Cal.App.5th at pp. 71–72, citing *Centeno, supra*, 60 Cal.4th at p. 672.) "The prosecutor may argue 'reasonably possible interpretations to be drawn from the evidence.'

6

[Citation.] 'It is permissible to argue that the jury may reject impossible or unreasonable interpretations of the evidence and to so characterize a defense theory.' [Citation.] The prosecutor may 'urge the jury to "'accept the reasonable and reject the unreasonable'"" in evaluating the evidence before it.'" (*Meneses, supra*, 41 Cal.App.5th at p. 71, quoting Centero, supra, 60 Cal.4th at pp. 672–673.) Furthermore, "A prosecutor may argue that defense interpretations of the evidence are unreasonable, but may not argue that deficiencies in the defense evidence can make up for shortcomings in the prosecution's case. [Citation.] The prosecutor may not 'confound[] the concept of rejecting unreasonable inferences with the standard of proof beyond a reasonable doubt.'" (*Meneses*, at p. 72.)

Here, while not necessarily inaccurate, the above quoted statements of the prosecutor, when viewed in isolation, had the potential of confusing the jury regarding the interplay between the concept of rejecting unreasonable inferences and the standard of proof beyond a reasonable doubt. However, for the reasons we will explain, we conclude these statements did not rise to the level of prosecutorial error "because in the context of the entire argument and jury instructions, it was not reasonably likely the jury understood or applied the statement in an improper or erroneous manner." (*Meneses, supra*, 41 Cal.App.5th at p. 73.)

"To find prosecutorial error, we must view the challenged statement in the context of the entire argument and the jury instructions to determine whether there was a reasonable likelihood the jury understood or applied the comments in an improper or erroneous manner. [Citation.] 'If the challenged comments, viewed in context, "would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable."'" (*Meneses, supra*, 41 Cal.App.5th at p. 74.)

As for the jury's understanding regarding the role of argument versus the instructions given by the court, on three occasions during the prosecutor's closing argument, in response to Abril's trial counsel's objections that the prosecutor misstated

7

the law, the court informed the jury the court's instructions, not counsel's argument controls. Toward the beginning of the prosecutor's closing argument, the court told the jury: "I'll tell you what the law is, ladies and gentlemen. We'll get there," an admonishment the court reiterated a short time later, adding that in the event the court's instructions on the law conflicted with the attorneys' arguments, the jurors were required to follow the court's instructions. Toward the end of the prosecutor's closing argument, the court restated the point: "I'll tell you what the law is. If it conflicts with what the lawyers say, follow my instructions." On more than one occasion during the prosecutor's rebuttal argument, the court reminded the jurors they must follow the court's instructions if the attorneys' arguments conflict with such instructions.

The prosecutor similarly told the jury in his closing argument: "Don't go by what I say or what defense counsel says, go by what the judge says and provides to you and what those actual legal instructions say." He also stated in his rebuttal argument: "So I'll tell you what the correct standard is. It's going to come from the jury instructions and it's going to come from the judge."

In giving those formal instructions to the jury, the trial court correctly defined the reasonable doubt standard. (*People v. Cortez* (2016) 63 Cal.4th 101, 131 [finding it significant the court properly defined reasonable doubt in its oral and written instructions when considering claim prosecutor committed error with statements in rebuttal argument].) The court instructed the jury with CALCRIM No. 220: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a

8

reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

As to direct and circumstantial evidence, the trial court instructed the jury with CALCRIM No. 224, stating: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

The court told the jurors that in evaluating a witness's testimony, they could consider the reasonableness of the testimony in light of all the other evidence in the case, and as to any opinion given by a witness at trial, they could "disregard all or any part of an opinion that [they] find unbelievable, unreasonable, or unsupported by the evidence." (CALCRIM No. 333 [Opinion Testimony of Lay Witness]; see CALCRIM No. 226 [Witnesses].)

As was the case in *Meneses, supra*, 41 Cal.App.5th at page 75, decided by a panel of this court, here "[t]he jury instructions left no doubt about the prosecution's burden of proof, the proper application of each juror's common sense and experience, and the role of reasonableness in reaching a verdict. To the extent the prosecutor's statement at the beginning of [closing] argument was inconsistent with the instructions, the jury was instructed to follow the latter." As in *Meneses*, here the trial court also

9

instructed the jury with CALCRIM No. 200:  "You must follow the law as I explain it to you, even if you disagree with it.  If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."  (See *Meneses, supra*, at p. 75.)

It is axiomatic "[w]e presume the jury followed the court's instructions, rather than any conflicting comment by counsel, in reaching a verdict.  [Citations.] '"[J]uries generally understand that counsel's assertions are the 'statements of advocates.'"'"  (*Meneses, supra*, 41 Cal.App.5th at p. 75.) )

Here, "'[i]n the context of the whole argument and the [jury] instructions'" (*Centeno, supra*, 60 Cal.4th at p. 667), the jury was not reasonably likely to understand the prosecutor's comments in his closing argument as diminishing the prosecution's burden of proof.  We therefore conclude the prosecutor did not commit prosecutorial error in his closing argument.

C. *The Prosecutor's Statements During Rebuttal Argument Did Not Constitute Prosecutorial Error*

In his opening brief, Abril contends the prosecutor "personally disparaged defense counsel" in the prosecutor's rebuttal argument.  (Boldface omitted.)  To provide context for Abril's contention, we first review Abril's trial counsel's closing argument, in which counsel addressed the meaning of the term "'abiding conviction,'" as follows:  "If, in your deliberations, you decide that there's a question that you have, it's an important question that the prosecution hasn't answered with evidence -- let's say you think, 'you know what, I'm going to ignore that question, probably not important, since there's no evidence of it, I'm just going to assume it's not important,' and you ignore it, if ten years down the road you hear -- you run into one of the other jurors and you hear, for instance, 'hey, you know what, they retested the DNA.  They have new technology and they're able to determine that the DNA was deposited on the firearm three months prior,' and you were like, 'oh, you know, I had thought about that, I had a question about the time

10

line as to how long that would be, but I'm' -- 'now that you said that there's evidence to the opposite, I would have changed my verdict based on that' -- if you have that question now, you have a reasonable doubt. [¶] So the question to be asking yourself is, do you have a question about the evidence, is there a gray area. And so long as that doubt is reasonable, . . . then the prosecutor hasn't met his burden."

In response, during his rebuttal argument, the prosecutor stated: "[Abril's trial counsel] also talked about how -- I think she gave an example of what an abiding conviction is, and she had to give an example about imagine ten years down the road, when there's some essentially future magical technology that would allow you to rethink this. That's how egregious the defense theory of the case is. [¶] She gives the example where ten years down the line, some new technology might cause her to rethink the defendant's guilt in this case and the defendant's convictions in this case. Come on, that alone is unreasonable."

Abril argues "the prosecution's comments that the defense strategy was 'egregious' and that defense counsel was 'unreasonable' added to the overall tone of the closing that defense counsel cannot be believed and to ignore any of defense counsel's remarks including raising a potentially reasonable defense to the prosecution's evidence."

We do not agree the jury would have understood the prosecutor's comments to denigrate defense counsel. The prosecutor argued defense counsel's *argument* — not defense counsel herself — was unreasonable — so unreasonable in his mind to be egregious. Nothing in the record shows the prosecutor accused Abril's trial counsel of fabricating a defense, factually deceiving the jury, or otherwise being dishonest in defending Abril. We find no error.

In addition, Abril contends during his rebuttal argument, the prosecutor erroneously shifted the burden of proof by improperly introducing facts not in evidence. Again, to provide context, we first review Abril's trial counsel's closing argument. In the defense's closing argument, Abril's trial counsel discussed the DNA evidence and argued

11

there was a reasonable inference Abril never touched the gun. Abril's trial counsel emphasized Wieland's testimony DNA can be transmitted by speaking or coughing over an item. In his rebuttal argument, the prosecutor stated: "In the evidence there's . . . nothing to suggest that [Abril] was coughing up a storm, sneezing on the gun. And if that was the case, if he's standing over the firearm, spitting all over it, sneezing all over it, it's going to spray. It's also going to get on the slide, ladies and gentlemen, and it did not, not in this case."

The prosecutor's statement was made in response to Abril's trial counsel's argument Abril's DNA could have been transferred to the gun if Abril had coughed or talked over it. The statement reflected a comment on the state of the prosecution's evidence, which did not include evidence of any such sneezing or coughing. In its statement, the prosecutor was not suggesting the existence of facts outside the record, or that defense counsel was hiding evidence from the jury or not doing her job in presenting evidence. We find no error.

Because there was no single prosecutorial error, there was no cumulative error. (*People v. Bolin* (1998) 18 Cal.4th 297, 345.)

## II.

### THE SECOND AMENDMENT

Abril contends his conviction for unlawful possession of a firearm in violation of section 29800, subdivision (a)(1) should be reversed as facially unconstitutional under the Second Amendment. To support his argument, he relies on the United States Supreme Court's interpretation of the Second Amendment in *Bruen, supra*, 142 S.Ct. 2111. Abril's constitutional challenge is without merit.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." As the due process clause of the Fourteenth Amendment to the United States Constitution incorporates the Second Amendment right to keep and bear

12

arms, the "Second Amendment right is fully applicable to the States." (*McDonald v. Chicago* (2010) 561 U.S. 742, 750.)

In *Bruen, supra*, 142 S.Ct. at p. 2131, the United States Supreme Court held the Second Amendment protects "'the right of *law-abiding*, responsible citizens to use arms' for self-defense." (Italics added.) We agree with the appellate court's analysis in *Alexander, supra*, 91 Cal.App.5th at page 479, "[c]onvicted felons, by definition are not law abiding" and "thus are not among 'the people' who have an individual right to possess firearms under the Second Amendment."

Here, like the defendant in *Alexander, supra*, 91 Cal.App.5th 469, Abril was convicted of violating section 29800, subdivision (a)(1), which provides in relevant part: "Any person *who has been convicted of a felony* under the laws of the . . . the State of California . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony." (Italics added.) As a convicted felon, Abril does not qualify for the Second Amendment protection afforded to law-abiding, responsible citizens. As such, his challenge to the constitutionality of section 29800, subdivision (a)(1) fails. (See *Alexander, supra*, 91 Cal.App.5th at p. 479 [challenge to "constitutionality of section 29800(a)(1) . . . under the Second Amendment fail[s] under the first step of *Bruen*'s analytical framework"]; see also *Zachary H. v. Teri A.* (2023) 96 Cal.App.5th 1136, 1145 ["recognizing the California cases that uphold the prohibition of 'felon weapon possession' post-*Bruen* — we conclude that *Bruen* does not call into question the lawfulness of firearms restrictions imposed on individuals subject to restraining orders"]; *People v. Ceja* (2023) 94 Cal.App.5th 1296, 1301 ["We agree with the cogent reasoning and analysis in *Alexander* . . . [and] hold that the felon in possession of ammunition prohibition . . . does not facially violate the Second Amendment"]; *In re D.L.* (2023) 93 Cal.App.5th 144, 166 ["We agree with *Alexander* . . . that *Bruen* did not expand 'the categories of people who may lawfully possess a gun,' and that those convicted of a felony are squarely in a category where gun possession is off-limits due to

their prior criminal conduct"]; *People v. Odell* (2023) 92 Cal.App.5th 307, 317 [agreeing with *Alexander* that § 29800, subd. (a)(1) is constitutional].)

In light of the foregoing, Abril's conviction for possessing a firearm as a felon, in violation of section 29800, subdivision (a)(1), does not offend the Second Amendment to the United States Constitution.

## DISPOSITION

The judgment is affirmed.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

14